UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JAIME ELICEO CASTRO GUAMAN,           )
                                      )
                Petitioner,           )
                                      )
        v.                            )        Case No. 2:26-cv-73
                                      )
DONALD J. TRUMP, IN HIS OFFICIAL      )
CAPACITY AS PRESIDENT OF THE          )
UNITED STATES; DAVID WESLING, IN      )
HIS OFFICIAL CAPACITY AS ACTING       )
BOSTON FIELD OFFICE DIRECTOR,         )
IMMIGRATION AND CUSTOMS               )
ENFORCEMENT, ENFORCEMENT AND          )
REMOVAL OPERATIONS; DAVID W.          )
JOHNSTON, VERMONT SUB-OFFICE          )
DIRECTOR OF IMMIGRATION AND           )
CUSTOMS ENFORCEMENT, ENFORCEMENT      )
AND REMOVAL OPERATIONS; TODD M.       )
LYONS, IN HIS OFFICIAL CAPACITY       )
AS ACTING DIRECTOR, U.S.              )
IMMIGRATION AND CUSTOMS               )
ENFORCEMENT; PETE R. FLORES, IN       )
HIS OFFICIAL CAPACITY AS ACTING       )
COMMISSIONER FOR U.S. CUSTOMS AND     )
BORDER PROTECTIONS; KRISTI NOEM,      )
IN HER OFFICIAL CAPACITY AS           )
SECRETARY OF THE UNITED STATES        )
DEPARTMENT OF HOMELAND SECURITY;      )
MARCO RUBIO, IN HIS OFFICIAL          )
CAPACITY AS SECRETARY OF STATE;       )
PAMELA BONDI, IN HER OFFICIAL         )
CAPACITY AS U.S. ATTORNEY             )
GENERAL; AND GREG HALE, IN HIS        )
OFFICIAL CAPACITY AS                  )
SUPERINTENDENT, NORTHWEST STATE       )
CORRECTIONAL FACILITY,                )
                                      )
                Respondents.          )

**OPINION AND ORDER**

Before the Court is Petitioner Jaime Eliceo Castro Guaman's petition for a writ of habeas corpus under 28 U.S.C. § 2241. ECF No. 1.  He seeks a "Writ of Habeas Corpus ordering Respondents to release Petitioner immediately on conditions this Court deems just and proper, or in the alternative to exercise its inherent authority to hold its own bail hearing on the question of custody, or in the alternative to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days."  ECF No. 1 at 17.  The Federal Respondents contend that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), and that his petition lacks merit and should be denied.  ECF No. 8.  The Federal Respondents, while "reserving all rights, including the right to appeal," have submitted an abbreviated response "to preserve legal issues and conserve judicial and party resources in light of this Court having held in other cases that the detention of noncitizens similarly situated to Petitioner was governed by § 1226(a), and that each such person was therefore entitled to a bond hearing before an immigration judge."  ECF No. 8 (citing *Reynoso De Luis v. Trump, et al.*, No. 25-CV-921, 2025 WL 3763397, at *2 (D. Vt. Dec. 30, 2025); *Acosta Yupangui v. Hale*, et al., No. 25-CV-884, 2025 WL 3207070 (D. Vt. Nov. 17, 2025); Opinion and Order,

2

*Piedrahita-Sanchez v. Turek, et al.*, No. 25-CV-875 (D. Vt. Nov. 14, 2025) (ECF Doc. No. 13)).

The Court held a status conference on March 19, 2026. At that status conference, the Court heard testimony from the Petitioner. For the reasons set forth below, the Court ORDERS a bond hearing before an immigration judge and the immediate release of Petitioner pending that bond hearing.

## I.    Factual Background

In his Petition, Petitioner states that he is "an Ecuadorian national who left his country due to harm and persecution of himself and his family." ECF No. 1 at 2. He "entered the United States in either California or Arizona on or about November of 2022 and was detained for about a day, to his recollection. On information and belief, he was released without conditions except for a date to appear in court." *Id.* He timely filed for asylum. *Id.* He has lived continuously in the United States since November of 2022, previously in Massachusetts and in Vermont since 2024. *Id.* Petitioner is currently employed by Castro Homes Construction, where he has worked for about a year. *Id.* He has two brothers and a sister in Vermont, as well as a nephew and multiple cousins. *Id.*

Petitioner has never been convicted of any crime. *Id.* at 3. On March 10, 2026, he was a passenger in his coworker's car on his way to work. *Id.* at 2-3. An ICE vehicle pulled over his

coworker's vehicle, even though Petitioner was not aware of any traffic infraction or other violation that occurred.  *Id.* at 3. Petitioner states that:

> ICE agents asked for identification, and Petitioner told them to look in his wallet where he had a Vermont State ID and learner's permit.  ICE agents did not inspect Petitioner's documents until after they brought him to the station.  Petitioner was given no reason to justify the stop until after he was at the station, where he was told they had been looking for someone else.  On information and belief, the reason given for the traffic stop, after the fact, was a pretext for unlawful racial profiling.

*Id.* at 3.

Petitioner is detained at the Northwest State Correctional Facility in Swanton, Vermont.  ECF No. 1 at 4.  He filed his petition on March 12, 2026, and that same day the Court issued a Temporary Restraining Order and Order to Show Cause which, among other things, ordered that "Petitioner shall not be removed from the District of Vermont pending further order of this court." The Federal Respondents filed their abbreviated response on March 16, 2026.  ECF No. 8.

This Court then held a status conference on March 19, 2026. At that status conference, the Court heard testimony from the Petitioner about his time in the United States.  Petitioner testified that he first arrived in this country on or about November 15, 2022.  He moved to Vermont in 2024, and he has brothers, nephews, and some friends in the state.  He has worked

4

for a construction company for more than a year and gets along well with his employers.  Petitioner has a work permit and a social security number (the person who helped him apply for asylum helped him to obtain these) and he pays taxes.  He has children who do not live in the country, and every week he sends money to them.  If released immediately, Petitioner testified that he would return to his apartment and to his job.  He said that he has no criminal record and has never been to court before outside of his immigration proceedings.

## II.   Jurisdiction and Legal Standard

District courts have jurisdiction under 28 U.S.C. § 2241 to hear claims that an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  Petitioners have the burden to demonstrate that their detention violates the Constitution or federal law. *See, e.g.*, 28 U.S.C. § 2241(c)(3); *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).[1]

---

[1] In this case, Respondents do not argue that Petitioner failed to exhaust his administrative remedies.  Other district courts have addressed, and excused, exhaustion in similar circumstances. *See, e.g., Lopez Benitez v. Francis et al.*, No. 1:25-CV-05937-DEH, 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588, *37-41 (S.D.N.Y. Aug. 13, 2025).

5

### III. <u>Discussion</u>

Petitioner requests a "Writ of Habeas Corpus ordering Respondents to release Petitioner immediately on conditions this Court deems just and proper, or in the alternative to exercise its inherent authority to hold its own bail hearing on the question of custody, or in the alternative to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days." ECF No. 1 at 17. The Federal Respondents contend that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), and that his petition lacks merit and should be denied. ECF No. 8. The Federal Respondents assert that the issues raised with regard to Section 1225 are similar to those this Court decided in *Piedrahita-Sanchez*, and incorporate by reference the legal arguments that they presented in opposition to the habeas petition filed in that case, while recognizing that, should the Court adhere to its reasoning in its prior cases, it would likely reach the same outcome in this case. ECF No. 8 at 2. Accordingly, the Federal Respondents "respectfully submit that the Court can decide this matter without further briefing and without oral argument." *Id.*

Accordingly, the Court adopts the same analysis regarding the Section 1225 issues in this case as in those cases, reproduced below.

### A. Basis for Detention

As is relevant here, two statutes principally govern the detention of noncitizens who do not have an order of removal: 8 U.S.C. §§ 1225 and 1226.  Section 1225 provides for inspection of "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States[,]" 8 U.S.C. § 1225(a)(3), where an "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States Waters)." *Id.* § 1225(a)(1).  Subject to certain exclusions the parties do not argue are applicable here, detention is mandatory under Section 1225:

> In the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

*Id.* § 1225(b)(2)(A).

Section 1226(c) governs the detention of noncitizens apprehended within the United States on criminal grounds. Section 1226(a) is a catchall provision that governs the detention of any other noncitizen apprehended by immigration enforcement and is generally understood to apply to noncitizens

7

"already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).[2]  Section 1226(a) creates a statutory right to a bond hearing before an immigration judge, but § 1225(b) and § 1226(c) call for mandatory detention.  *Id.* at 302, 305-06.

This July, the Department of Homeland Security ("DHS") adopted a new interpretation of Section 1225 of the Immigration and Nationality Act (INA), one that Federal Respondents advance in this case.  *See Martinez v. Hyde*, No. 25-11613-BEM, 2025 U.S. Dist. LEXIS 141724, 2025 WL 2084238, at *12 (D. Mass. July 24, 2025) (describing "novel interpretation").  In September, the BIA issued a ruling in a case called *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which held that all noncitizens who enter the United States without inspection are "applicants for

---

[2] The Court notes that the Government has argued that *Jennings* supports its interpretation of Sections 1225 and 1226, because it states that 1226 applies to "certain aliens already in the country[,]" and the word "certain" means that it is not the exclusive source of detention authority for certain aliens who are already in the country.  Rather, the Court considers the *Jennings* opinion to lend support to Petitioner's reading of the statutes: at most, the opinion is ambiguous.  *See Jennings*, 583 U.S. at 288 ("Even once inside the United States, aliens do not have an absolute right to remain here.  For example, an alien present in the country may still be removed if he or she falls 'within one of more…classes of deportable aliens.' § 1227(a). That includes aliens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission.  *See* §§ 1227(a)(1), (2).  Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal.").

admission" who are "seeking admission" within the meaning of § 1225(b), no matter how long they have lived in the United States.

In this case, Petitioner has been detained pursuant to 8 U.S.C. § 1225(b)(2).  It is the Federal Respondents' position that, notwithstanding his over three-year presence in this country, Petitioner remains an "applicant for admission" who is "seeking admission" and is subject to detention under Section 1225(b)(2).  As an initial matter, the Court notes that other district courts in this Circuit have consistently rejected the Federal Respondents' proposed, broad interpretation of § 1225(b)(2)(A).  *See, e.g., Benitez v. Francis,* No. 25-cv-5937 (DEH), 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588, at *25 (S.D.N.Y. Aug. 13, 2025); *Samb v. Joyce,* No. 25-cv-6373, 2025 U.S. Dist. LEXIS 161109, 2025 WL 2398831, at *3 (S.D.N.Y. Aug. 19, 2025); *Gonzalez v. Joyce,* No. 25-cv-8250, 2025 U.S. Dist. LEXIS 208578, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025); *Hyppolite v. Noem,* No. 25-cv-4304, 2025 U.S. Dist. LEXIS 197628, 2025 WL 2829511, at *8-12 (E.D.N.Y. Oct. 6, 2025); *J.U. v. Maldonado,* No. 25-cv-04836 (OEM), 2025 U.S. Dist. LEXIS 191630, 2025 WL 2772765, at *5-9 (E.D.N.Y. Sept. 29, 2025); *Perez v. Francis*, No. 25-cv-8112 (JGK), 2025 U.S. Dist. LEXIS 219356, at *5-7 (S.D.N.Y. Nov. 6, 2025); *Ortiz v. Freden*, No. 25-cv-960-LJV, __ F. Supp. 3d__, 2025 U.S. Dist. LEXIS 217654, 2025 WL

9

3085032, at *36-37 (W.D.N.Y. Nov. 4, 2025).  Moreover, the vast majority of cases across the country have held similarly, with a few exceptions that the Federal Respondents have previously cited.[3]

The Court begins its analysis with the statutory text and plain meaning.  *See United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016).  First, the title of Section 1225 is: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." 8 U.S.C. § 1225 (emphasis added).  The word "arriving" in the title indicates that it does not refer to noncitizens present already.  *See Pizarro Reyes*, No. 25-cv-12546, 2025 U.S. Dist. LEXIS 175767, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025) ("the use of 'arriving' to describe noncitizens strongly indicates that the statute governs the *entrance* of noncitizens to the United States.  This reading is bolstered by the fact that 1225 clearly establishes an inspection scheme for when to let noncitizens into the country.").

---

[3] The Court has read and considered *Chavez v. Noem*, No. 25-cv-2325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Vargas Lopez v. Trump,* 2025 U.S. Dist. LEXIS 192557, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Oliveira v. Patterson*, No. 6:25-cv-01463, 2025 U.S. Dist. LEXIS 218128 (W.D. La. Nov. 4, 2025); and *Pena v. Hyde*, No. 25-cv-11983, 2025 WL 2108913 (D. Mass. July 28, 2025) and does not find them persuasive in this context.

Section 1225(b)(2) provides that "in the case of an alien who is *an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Under section 1225(a)(1), an "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." *See also Ascencio-Rodriguez v. Holder*, 595 F.3d 105, 108 n.3 (2d Cir. 2010) ("Aliens not admitted are treated as 'applicants for admission.'" (citing 8 U.S.C. § 1225(A)(1)). Elsewhere, the INA defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

As for the meaning of "seeking admission," this Court finds that the likely meaning is those noncitizens presenting themselves at the border, or who were recently apprehended just

11

after entering.[4]  However, to the extent the statute may be considered ambiguous as to whether it means either seeking the legal right to enter (Federal Respondents) or the act of entering the country at the border or otherwise (Petitioner), the Court turns to the canons of statutory construction.  Once again, this Court agrees with many other courts that: if all "applicant[s] for admission" also are "seeking admission," then the words "seeking admission" would be surplusage.  *Ortiz v. Freden*, No. 25-cv-960-LJV, __ F. Supp. 3d__, 2025 U.S. Dist. LEXIS 217654, 2025 WL 3085032, at *15-16 (W.D.N.Y. Nov. 4, 2025) ("After all, Congress simply could have said 'if the examining

---

[4] As the district court in *Benitez v. Francis* analogized:

> This understanding accords with the plain, ordinary meaning of the words "seeking" and "admission." For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to Mr. Lopez Benitez, because he has already been residing in the United States for several years.

*Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588, at *21 (S.D.N.Y. Aug. 13, 2025).

immigration officer determines that *an applicant for admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained.'" (emphasis in original)).

This Court also agrees with other district courts who have observed that this reading is supported by the other subparagraphs in Section 1225(b)(2). Subparagraph (B) provides that Section 1225(b)(2)(A) "shall not apply to an alien…who is a crewman" or "who is a stowaway" and subparagraph C specifies a return procedure in the case of an alien described in subparagraph (A) who is "arriving on land." 8 U.S.C. § 1225(B), (C). The carve-outs for various means of initial arrivals into the United States suggests that those covered by Section 1225(b)(2) who are "seeking admission" refer to those individuals presenting themselves at the border (or those who have not yet effected entry, such as the noncitizen who succeeded in making it 25 yards into U.S. territory in *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)).

Similarly—and, again, following the analysis of other courts—the Court observes that the Federal Respondents' interpretation of Section 1225(b)(2) would render the 2025 Laken Riley Act—which amended 8 U.S.C. § 1226(c)—without meaning. *See, e.g., Ortiz v. Freden*, No. 25-cv-960-LJV, __ F. Supp. 3d__, 2025 U.S. Dist. LEXIS 217654, 2025 WL 3085032, at *17-18 (W.D.N.Y. Nov. 4, 2025). It is unlikely that Congress passed

the Laken Riley Act to add Subsection (c)(1)(E) to the mandatory detention scheme under Section 1226(c) if those individuals were already covered by mandatory detention under Section 1225(b)(2).

In support of its position, the Federal Respondents point to the legislative history of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which streamlined the distinct deportation and exclusion proceedings into "removal proceeding." The Federal Respondents argue that Congress sought to discard the former regime and eradicate detention discrepancies. However, this Court shares the skepticism of other district courts faced with the argument that Congress was seeking to completely overhaul the systems of detention as well. *See Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 U.S. Dist. LEXIS 179594, 2025 WL 2637503, at *30-32 (N.D. Cal. Sept. 12, 2025); *see also Zumba v. Bondi*, No. 25-cv-14626 (KSH), 2025 U.S. Dist. LEXIS 190052, 2025 WL 2753496, *30 n.5 (D.N.J. Sept. 26, 2025) ("The Court need not consider the legislative history because it finds the statute is clear and simply notes that Congress' stated goal was to put certain noncitizens seeking entry on more equal footing with noncitizens who were present in the United States with respect to their removal proceedings. The cited legislative history does not suggest that Congress also intended to subject all noncitizens who entered the United States without inspection to mandatory detention during their removal

14

proceedings." (emphasis in original)); *see also Romero v. Hyde*, No. 25-11631-BEM, __ F. Supp. 3d__, 2025 U.S. Dist. LEXIS 160622, 2025 WL 2403827, at *29 (D. Mass. Aug. 19, 2025)(Congressional intent was not expressed as to *detention* pending the outcome of the immigration proceedings, and "[r]ealistically speaking, if Congress's intention was so clear, why did it take thirty years to notice?").

### B. Constitutional Deprivation

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), sets out a three-part test that the Second Circuit has applied when determining the adequacy of process in the context of civil immigration confinement. *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Under *Mathews*, the three factors are: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

On the first prong, Petitioner's private interest in "freedom from imprisonment" is strong. *See Velasco Lopez*, 978 F.3d at 851 ("the most significant liberty interest there is—the

15

interest in being free from imprisonment." (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).  Petitioner "was detained without any pre-detention, individualized determination as to whether he posed a flight risk or any risk of dangerousness" nor is there any indication that "there was any material change in circumstances that triggered [Petitioner's] sudden arrest and detention"; rather, "it appears [Petitioner] was detained simply because" he was a passenger in a coworker's car that was detained by ICE.  *Hyppolite v. Noem,* No. 25-cv-4304, 2025 U.S. Dist. LEXIS 197628, 2025 WL 2829511, at *34-35 (E.D.N.Y. Oct. 6, 2025) (case in which the petitioner was detained when he appeared for a previously calendared conference in immigration court).

On the second prong, the Court weighs the risk as high because "[t]he purpose of the bond hearing employed when the government seeks to exercise its discretion in detaining a noncitizen under § 1226(a) is to provide procedures which will better ensure that people who are, in fact, a risk of flight or a danger to the community are the people [who] are ultimately detained."  *Id.*  Here, there were no procedural safeguards in the form of a bond hearing, and there are no planned procedural safeguards.[5]  *Zumba v. Bondi*, No. 25-cv-14626 (KSH), 2025 U.S.

---

[5] The Federal Respondents have previously observed that the detention under Section 1225 is not indefinite: the Petitioner

16

Dist. LEXIS 190052, 2025 WL 2753496, *29-30 (D.N.J. Sept. 26, 2025) ("the first and second *Mathews* factors weight heavily in petitioner's favor, as she has been deprived of her liberty, erroneously subjected to mandatory detention under § 1225 during her removal proceedings, and denied due process protections, including the right to seek bond.").  As there has been no bond hearing, apparently no one has assessed Petitioner's risk of flight and dangerousness.  The lack of procedure contributes to an increased risk of erroneous deprivation.  *See, e.g., Black v. Decker*, 103 F.4th 133, 152, (2d Cir. 2024) *reh'g en banc denied,* 2025 U.S. App. LEXIS 27912, 2025 WL 2989687 (2d Cir. Oct. 24, 2025) (in considering the category of people subject to mandatory detention under the former version of Section 1226(c), the Second Circuit held that "the almost nonexistent procedural protections in place for section 1226(c)" contribute to a "markedly increased…risk of an erroneous deprivation of [p]etitioners' private liberty interest" where the only procedural protection available was a hearing to contest whether the petitioners in fact committed a crime that makes them subject to mandatory detention under that statute).

---

could be granted temporary parole under §§ 1225(b)(1) or (b)(2) for "urgent humanitarian reasons or significant public benefit" or the Petitioner's detention could end once removal proceedings have concluded.  Regardless, erroneous deprivation in the meantime will have no procedural protections.

On the third prong, on the record currently before the Court, the Federal Respondents do not have a significant interest in Petitioner's continued detention.  It is not authorized by 8 U.S.C. § 1225 and it serves no legitimate purpose.  *See Lopez Benitez v. Francis et al.*, No. 1:25-CV-05937-DEH, 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588, *36 (S.D.N.Y. Aug. 13, 2025) ("The Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose such as ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." (cleaned up)).  On the other hand, the Court recognizes that there is a governmental interest in ensuring persons "do not commit crimes or evade law enforcement"—as such, a bond hearing will "permit the Immigration Court to consider those interests while also safeguarding Petitioner's significant private interests in personal liberty and due process."  *Adonay E.M. v. Noem*, No. 25-cv-3975, 2025 U.S. Dist. LEXIS 222247 at *26 (D. Minn. Nov. 12, 2025).

Accordingly, the Court finds that Petitioners' due process rights were violated, and the habeas petition must be granted. *See Gonzalez v. Joyce,* No. 25-cv-8250, 2025 U.S. Dist. LEXIS 208578, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025) ("Because Respondents' ongoing detention of [Petitioner] with no

18

process at all, much less prior notice, no showing of changes circumstances, or an opportunity to respond, violates his due process rights,[] the Petition must be granted." (internal quotation marks and citation omitted)).

## IV.   Remedy

Generally, writs of habeas corpus are used to request release from custody. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005).  A habeas court has "the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779-80 (2008) (noting that at "common-law habeas corpus was, above all, an adaptable remedy.").  When faced with similar habeas petitions, this Court has previously ordered a bond hearing or, alternatively, immediate release. *See, e.g., Reynoso De Luis v. Trump, et al.*, No. 25-CV-921, 2025 WL 3763397, at *2 (D. Vt. Dec. 30, 2025); *Acosta Yupangui v. Hale, et al.*, No. 25-CV-884, 2025 WL 3207070 (D. Vt. Nov. 17, 2025); Opinion and Order, *Piedrahita-Sanchez v. Turek, et al.*, No. 25-CV-875 (D. Vt. Nov. 14, 2025) (ECF Doc. No. 13).

The Court notes that, as the Federal Respondents acknowledged in their pleadings and as the Petitioner asserts in his petition, some other district courts have simply ordered immediate release. *See, e.g.,* Order, *Lopez-Niz v. Hale, et al.,*

19

No. 25-CV-912 (D. Vt. Dec. 30, 2025); *Hyppolite v. Noem,* No. 25-cv-4304, 2025 U.S. Dist. LEXIS 197628, 2025 WL 2829511, at *44 (E.D.N.Y. Oct. 6, 2025) ("Hyppolite's Amended Petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED.  At the hearing on September 29, 2025, the Court ordered Respondents to immediately release Hyppolite from custody, and was later informed by Respondents' counsel that he was released that same day."); *Gonzalez v. Joyce*, No. 25-cv-8250, 2025 U.S. Dist. LEXIS 208578, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025) (habeas petition granted and respondents ordered to immediately release petitioner from custody and certify compliance with a filing the next day); *Benitez v. Francis*, No. 25-cv-5937 (DEH), 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *J.U. v. Maldonado*, No. 25-cv-04836 (OEM), 2025 U.S. Dist. LEXIS 191630, 2025 WL 2772765, at *31 (E.D.N.Y. Sept. 29, 2025) ("Respondent is ORDERED to immediately release Petitioner from custody.").

Here, the Federal Respondents ask the Court to, if it follows its previous cases, order the same relief it ordered in *Piedrahita-Sanchez*: a bond hearing.  ECF No. 7 at 2. Petitioner, on the other hand, requests a "Writ of Habeas Corpus ordering Respondents to release Petitioner immediately on conditions this Court deems just and proper, or in the alternative to exercise its inherent authority to hold its own

20

bail hearing on the question of custody, or in the alternative to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days." ECF No. 1 at 17. For the reasons set forth above, the Court orders a bond hearing. Again, numerous other courts have fashioned similar relief.

With that said, the Court takes into account the evidence it heard at the March 19, 2026 hearing. This evidence concerned, first, the nature of the Petitioner's detention: he was detained because he was a passenger in a coworker's car on his way to work. Petitioner asserts that the stop was a pretext for unlawful racial profiling. ECF No. 1 at 3; *see also* Order, *Patin Patin v. Trump et al.*, No. 2:26-cv-71 (D. Vt. Mar. 17, 2026), ECF No. 12, at 10 ("In deciding to release Ms. Patin Patin, the court also had to confront the extraordinary context in which her arrest took place. The Government has adopted a policy of mass detention for immigrants despite the constitutional limitations on civil detention. ICE frequently makes arrests without an administrative warrant or an individualized assessment of flight risk or danger to the community, as it is their position that almost every undocumented person in the country is subject to mandatory detention. And many of the individuals caught in the Government's net, like Ms. Patin Patin, are not specific targets for enforcement. Rather, their arrests are the product of being

21

in the wrong place at the wrong time.").  There was no apparent change in the Petitioner's circumstances that led to the Federal Respondents' decision to detain Petitioner.  Additionally, the Court heard evidence that the Petitioner was not a flight risk and was not a danger to his community.  Petitioner has siblings in the area, and no criminal convictions.  The Court is confident that he does not pose a risk of flight or danger to the community.  He is hardworking and appears to be a very responsible individual.  This justifies the Court's finding that the Petitioner's situation is one of extraordinary circumstances.  The Federal Respondents did not put on any evidence to the contrary, except to note that Petitioner failed to report his move to Vermont to DHS (though the Federal Respondents do not dispute that Petitioner has shown up for his scheduled hearings with immigration court). Federal Respondents also alleged that ICE agents were surveying targets in Vermont, and that the morning he was detained Petitioner left a known house and got into a car with obscured paper license plates.

The Court finds that Petitioner's considerations are "extraordinary circumstances" that make immediate release "necessary to make the habeas remedy effective."  *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001).[6]

---

[6] *Mapp* concerned the standards for granting bail (even in cases challenging detention by the Immigration and Naturalization

Thus, the Court orders that the Petitioner be immediately released pending the bond hearing.  This approach has been taken by other district courts when confronted with similar situations.  *See, e.g., Tomas Elias v. Hyde*, No. 25-cv-540-JJM-AEM, 2025 U.S. Dist. LEXIS 210971, 2025 WL 3004437, at *5 (D.R.I. Oct. 27, 2025) (granting habeas petition and stating: "The Government is ORDERED to provide him with a bond hearing before an IJ pursuant to 8 U.S.C. 1226(a) within ten days of the date of this order.  Further, the Court ORDERS the Government to release Mr. Tomas Elias immediately pending the bond hearing.  The Government shall set minimal release conditions that will reasonably assure Mr. Tomas Elias's appearance at the bond hearing."); *Orellana v. Noem*, 807 F. Supp. 3d 745, 755 (W.D. Ky.

---

Service) pending a final decision on a habeas petition.  Here, the Court is in the position of deciding the habeas petition upon its merits—and having already rejected the Federal Respondents' legal position in other cases—but also, having fashioned relief particular to the circumstances of this case (ordering a bond hearing), has the chance to address Petitioner's circumstances in the meantime.  The Court thus finds that Petitioner has substantial claims for relief—the Court rules in favor of Petitioner on the Section 1225 issue, and has already decided multiple cases on this basis.  *See Mapp*, 241 F.3d at 230 (a court "considering a habeas petitioner's fitness for bail must inquire into whether the habeas petition raises substantial claims and whether extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective." (cleaned up)).  The Court also finds that extraordinary circumstances exist, as set forth above.  Thus, although the Court is not formally granting bail and is rather fashioning a relief tailored to the circumstances of this case, it follows the reasoning of *Mapp.*

2025) ("The United States is directed to release Petitioner Orellana from custody and provide her with a bond hearing before a neutral Immigration Judge…").

Accordingly, the Court ORDERS that the Petitioner be immediately released.  The Court is also ordering a bond hearing.

### V. Conclusion

For the foregoing reasons, Petitioner's Petition for a Writ of Habeas Corpus, ECF No. 1, is GRANTED in part.  The Federal Respondents are ORDERED to hold an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) for Petitioner.  Pending that hearing, the Court ORDERS that the Petitioner be immediately released.

Because the Court is ordering that Petitioner be immediately released pending his bond hearing, the Court dissolves its previously entered TRO.  ECF Nos. 4, 5.

Dated at Burlington, in the District of Vermont, this 20th day of March 2026.

/s/ William K. Sessions III
Hon. William K. Sessions III
United States District Court